UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALEXANDER PERGAMENSCH,

    Plaintiff,

    v.

NOVATO POLICE DEPARTMENT, et al.,

    Defendants.
_____/

No. C 06-6659 PJH

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Defendants' motions for summary judgment came on for hearing before this court on July 11, 2007. Plaintiff Alexander Pergamensch appeared in propria persona; defendant City of Novato, Detective McKenzie, and Officer Kevin Naugle appeared by their counsel Richard Osman; and defendant County of Marin and Marin County District Attorney Edward S. Berberian, Jr., appeared by their counsel Renee Giacomini Brewer. Having read defendants' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motions.

**BACKGROUND**

This is a case brought under 42 U.S.C. § 1983, alleging false arrest, failure to train or supervise, and violation of plaintiff's first amendment right to petition for redress of grievances.

On October 24, 2005, Officer Kevin Naugle of the Novato Police Department was dispatched to investigate a report of criminal threats. Officer Naugle states in a declaration that he met at the police station with plaintiff's mother, Ludmila Pergamenshikova, who told him that plaintiff was en route from Russia, and had threatened (in a telephone call from Russia) to kill her.

Officer Naugle spoke to Ms. Pergamenshikova for approximately one hour. Ms. Pergamenshikova told Officer Naugle that she had received a phone call from plaintiff at approximately 5:00 a.m. on October 24, 2005. Ms. Pergamenshikova reported that plaintiff stated, "Because you destroyed my life and my business I will kill myself, but I will take someone before me, my brother or you. I'll make you feel sorry for the rest of your life." Ms. Pergamenshikova indicated that she believed, based on this threat, that her son would kill her.

Ms. Pergamenshikova also said she had received other threatening messages from plaintiff, and that plaintiff's wife, who lived with her, had witnessed threats made by plaintiff. She told Officer Naugle that plaintiff had lived with her and that she had supported him financially for the past four years, but that she had recently stopped giving him money. She said his behavior had changed drastically during those four years and she assumed he was using drugs.

Ms. Pergamenshikova stated that plaintiff had occasionally withdrawn money from her bank account without her permission, and that she had allowed him to get away with it for a time. She also stated that in May 2005, plaintiff had abruptly left Novato for St. Petersburg, Russia. While he was in Russia, he withdrew more money from her bank account, and as a result, she closed all her accounts.

According to Officer Naugle, Ms. Pergamenshikova was shaking and tearful, and expressed serious concern for herself and her son. She said plaintiff was scheduled to leave Russia on October 24, 2005, at approximately 8:00 p.m., and stated that she would confirm with Officer Naugle whether plaintiff did in fact leave on that flight. At approximately 9:00 p.m., Ms. Pergamenshikova left Officer Naugle a voicemail stating that

2

plaintiff had boarded Air France Flight No. 0084, which was scheduled to arrive at San Francisco International Airport ("SFO") on the morning of October 25, 2005.

Officer Naugle called Ms. Pergamenshikova back at approximately 10:00 p.m. on October 24, and she confirmed that plaintiff had boarded the plane from Russia. Officer Naugle offered to obtain an emergency protective order for her. At about 11:00 p.m., he contacted Judge Grove of the Marin County Superior Court and requested an emergency protective order. Judge Grove granted the request.

Officer Naugle then contacted the San Francisco Police Department and spoke to Officer Boyle. He asked her to investigate and attempt to confirm whether plaintiff was in fact on the flight. Officer Boyle called back to report that Air France Flight 0084 was scheduled to land at SFO on October 25, 2005, at 12:25 p.m., and told Officer Naugle that he could call the Customs Division after 7:00 a.m. on October 25 to confirm that plaintiff was on the flight.

Officer Naugle told Officer Boyle that Alexander Pergamensch was to be arrested when he exited the airplane, and held until the Novato Police Department could take custody of him. At 1:55 p.m., on October 25, 2005, plaintiff was arrested by Novato Police Department officers at SFO for violation of California Penal Code § 422 (criminal threats). He was then transferred to the Marin County Jail.

Based on the arrest, the Marin County District Attorney's Office filed a complaint against plaintiff on October 26, 2005. Bail was set at $125,000. On November 16, 2005, plaintiff pled not guilty, and was released on his own recognizance. (The protective order remained in effect.)

At the preliminary hearing on April 17, 2005, plaintiff's mother testified (via a Russian interpreter) that plaintiff had threatened to kill her because she would not give him money, and had at another time exhibited aggressive behavior by breaking two doors in her home. However, at the further preliminary hearing on May 5, 2006, Ms. Pergamenshikova (who had previously been sworn) refused to testify further, invoking her rights under the Fifth Amendment. The case was dismissed and the protective order was terminated.

On April 25, 2006, plaintiff filed a petition for finding and declaration of factual innocence, and a motion to seal and destroy the record of arrest. There is no indication in the record as to the disposition of plaintiff's petition.

Plaintiff filed the present action on October 25, 2006, and also filed a request to proceed in forma pauperis (IFP). The request was denied and the complaint was dismissed pursuant to 28 U.S.C. § 1915(e). On February 5, 2007, plaintiff filed an amended complaint, alleging three causes of action: 1) unlawful arrest, in violation of his rights under the Fourth Amendment; 2) failure to supervise, train, and discipline the officers involved in the arrest; and 3) the making of threats of criminal prosecution, in retaliation against plaintiff for attempting to initiate criminal proceedings in Russia, in violation of plaintiff's First Amendment right to petition the government for redress of grievances.

On February 27, 2007, the court denied the IFP request, on the basis that plaintiff did not qualify as indigent. Plaintiff paid the filing fee on April 5, 2007.

**DISCUSSION**

A.   Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

4

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "To show the existence of a 'genuine' issue, . . . [the plaintiff] must produce at least some significant probative evidence tending to support the complaint." Smolen v. Deloitte, Haskins & Sells, 921 F.2d 959, 963 (9th Cir. 1990) (quotations omitted). Thus, the plaintiff cannot rest on the allegations in his pleadings to overcome a motion for summary judgment. See Ghebreselassie v. Coleman Sec. Serv., 829 F.2d 892, 898 (9th Cir. 1987). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

B.   City of Novato's Motion

   1.   Liability of Novato Police Officers

The City of Novato ("the City") argues that the evidence shows that, under the totality of the circumstances, plaintiff's arrest was supported by more than sufficient probable cause. The City contends that Ms. Pergamenshikova was an honest citizen victim reporting the criminal conduct of her son. The City notes that Ms. Pergamenshikova personally appeared at the Police Department; met with Officer Naugle for over an hour; and specifically told Officer Naugle that she felt threatened by plaintiff's statements, and that she was afraid that plaintiff would kill her.

In addition, the City asserts, Officer Naugle also met with his supervisor, Sgt. Heiden, to discuss Ms. Pergamenshikova's report, and his supervisor agreed that, based on the information provided by Ms. Pergamenshikova, probable cause existed for plaintiff's arrest for making criminal threats. The City contends that Officer Naugle also confirmed the flight information, and that the facts and circumstances within the Officers' knowledge were sufficient to warrant a reasonable person to belief that plaintiff had committed the offense of making criminal threats.

Under Civil Local Rule 7-3(a), plaintiff's opposition to defendants' motions was due on June 20, 2007, but none was filed. On July 5, 2007, plaintiff submitted a declaration "in

5

support of and application to deny or continue hearing on motions for summary judgment." He also submitted a declaration purportedly signed by his mother, in which she states that she "do[es] not speak English proficiently," and that "[t]he police failed to translate the Russian language that occurred in our conversation over the phone correctly." She also claims, "To my current knowledge, my son is not addicted to drugs, and has never threatened or tried to hurt me."

In his declaration, plaintiff states that he was born in Soviet Georgia in 1967; that he attended high school in the former Soviet Union, and moved to the United States in 1990; that he earned a B.S. in biology from Stanford in 1998; that he became a citizen of the United States in 1999; that he sponsored his mother to come as an immigrant from the Republic of Georgia; that he moved to St. Petersburg, Russia, to attend medical school and received an M.D. in 2003; that his mother is employed as a registered nurse; and that he is currently employed as a post-doctoral research fellow at the Brain Development Research Program at the University of California in San Francisco.

Plaintiff claims that in 2005, he was living in St. Petersburg, and started a biotech company, in which his mother invested her savings. According to plaintiff, his brother became involved with "a group of Russian thugs," and that one of those thugs robbed plaintiff and locked him in his apartment. When plaintiff escaped, his brother beat him and stole his passport. Plaintiff contends that while he was imprisoned by the thug, he called his mother and told her of the "problems" he was having with his brother, and stated that his brother's bad behavior would have a "profound and long lasting effect" on her life. Plaintiff's brother and the thug then allegedly forced plaintiff onto an Air France flight from St. Petersburg to San Francisco.

Plaintiff claims that his brother told their mother that plaintiff was using illicit drugs. (Plaintiff denies the drug use.) Plaintiff asserts that it was based on this false information, that their mother "attempted to communicate her predicament to her local police department in Novato." According to plaintiff, his mother's English is very poor, and "the police mistakenly understood her to charge that [plaintiff] had threatened to kill her."

Plaintiff asserts that when he arrived at SFO on October 25, 2007, Novato police officers arrested him, despite the fact that he was in a wheelchair (because of his injuries, from the alleged beating).  He claims that he begged them to investigate the matter further before arresting him, urging them to question his mother again with the assistance of a Russian translator, and also asserting that they should investigate the facts regarding his kidnaping, robbery, and beating in St. Petersburg.  However, he asserts, his protests were to no avail, and he was taken to jail, where he was held from October 25, 2005, until November 16, 2005.

Plaintiff states that when his case came up for a preliminary hearing several months later, his mother was "unable" to testify in English and required a Russian translator.  He states that the charge against him was dismissed after his attorney began to cross-examine his mother because she invoked her Fifth Amendment privilege not to incriminate herself.

The Fourth Amendment requires that an arrest be supported by probable cause. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001); Michigan v. Summers, 452 U.S. 692, 700 (1981) (an arrest is unlawful unless there is probable cause to support it).  A claim of unlawful arrest is cognizable under § 1983 for violation of the Fourth Amendment's prohibition against unreasonable search and seizure if the allegation is that the arrest was without probable cause or other justification.  See Pierson v. Ray, 386 U.S. 547, 555-58 (1967); Larson v. Neimi, 9 F.3d 1397, 1400 (9th Cir. 1993).

An arrest is supported by probable cause if, under the totality of the circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime.  Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004); Grant v. City of Long Beach, 315 F.3d 1081, 1085 (9th Cir. 2002).  "'[P]robable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily.'"  Hart v. Parks, 450 F.3d 1059, 1066 (9th Cir. 2006) (quoting Franks v. Delaware, 438 U.S. 154, 165 (1978)).

Here, the undisputed facts show that plaintiff's arrest was supported by probable

7

cause. Officer Naugle interviewed Ms. Pergamenshikova at length, and found her to be credible when she reported the alleged threat on her life. Officer Naugle's declaration establishes that under the totality of the circumstances known to him at the time of the arrest, he reasonably concluded that there was a fair probability that plaintiff had committed a crime. Accordingly, the court finds that the City's motion must be GRANTED.

The court finds further that the late-filed declaration of Ms. Pergamenshikova does not create a triable issue of fact with regard to whether the officers had probable cause to arrest plaintiff. Officer Naugle determined there was probable cause based on Ms. Pergamenshikova's statements and general demeanor on October 24. Ms. Pergamenshikova repeated the allegations of threats and violence perpetrated by plaintiff when she testified under oath (with the assistance of a Russian translator) at the preliminary hearing in April 2006.

Plaintiff himself has no personal knowledge of what Ms. Pergamenshikova told Officer Naugle, and Ms. Pergamenshikova does not state in her declaration what she told Officer Naugle during their hour-long conversation. Plaintiff cannot create a triable issue by submitting a declaration in which Ms. Pergamenshikova purports to change her previous sworn testimony, and simply asserts that Officer Naugle must have misunderstood her because she is not fluent in English.

2.   Liability of the City of Novato

The City argues further that plaintiff cannot establish municipal liability under § 1983, and that the cause of action for failure to supervise/train is without merit. The City notes that a municipality cannot be liable on a respondeat superior theory, and that a municipality can be liable only where the alleged unconstitutional conduct is the result of an official custom, practice, or policy. The City asserts that plaintiff has provided no evidence that any alleged constitutional violation resulted from an official policy or practice of the City.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort; however, a city or county may not be

held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior. Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978).

To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation. See Plumeau v. School Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997). Here, plaintiff has provided no evidence of any unlawful City policy or custom, and summary judgment must therefore be GRANTED on the Monell claim.

A local government may also be liable for constitutional violations resulting from its failure to supervise, monitor or train, but only where the inadequacy of said supervision, monitoring or training amounts to deliberate indifference to the rights of the people with whom the local government comes into contact. See City of Canton v. Harris, 489 U.S. 378, 388 (1989); Long v. County of Los Angeles, 442 F.3d 1178, 1188-89 (9th Cir. 2006). Only where a failure to supervise and train reflects a "'deliberate' or 'conscious' choice" by a local government can the local government be liable under § 1983. See Harris, 489 U.S. at 389. Further, the plaintiff must demonstrate that the alleged deficiency in supervision and training actually caused the requisite indifference. See id. at 391.

Here, plaintiff has provided no evidence of deficient supervision or training. In addition, a municipality cannot be liable for damages based on the actions of one of its employees unless the employee inflicted constitutional harm. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1996). This does not mean that the liability of municipalities turns on the liability of individual employees; rather, "it is contingent on a violation of constitutional rights." Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994). In this case, the City cannot be liable for damages based on the actions of its police officers, because plaintiff has provided no evidence of any constitutional violation.

9

3.      Dismissal for Failure to Prosecute

The City argues in the alternative that the entire action should be dismissed under Federal Rule of Civil Procedure 41(b) for failure to prosecute. The City asserts that plaintiff unreasonably delayed in prosecuting this action, noting that as of May 29, 2007, plaintiff still had not served the defendant police officers; that plaintiff failed to appear at the scheduled case management conference on April 4, 2007; that plaintiff failed to serve initial disclosures as required by Rule 26; and that plaintiff failed to timely oppose the present motion. The City asserts that plaintiff has acted with willfulness and bad faith in flouting the court's rules and orders.

The City also contends that plaintiff's bad faith is evidenced by his recent harassing behavior, which included the sending of multiple inappropriate e-mails to Novato Police Department. For example, on April 24, 2007, plaintiff sent a number of e-mails to Officer Naugle, Lt. Tejada (of the Novato Police Department), Chief Kreins (of the Novato Police Department), and the Marin County District Attorney. Copies of some of those e-mails are attached as exhibits to the declaration filed by counsel for the City of Novato. In general, they are harassing, and, in the Case of Lt. Tejada, sexually explicit.[1]

The court has considered the City's arguments, but finds it unnecessary to rule on the motion to dismiss for failure to prosecute, having determined that summary judgment must be granted as to the entire amended complaint.[2]

C.    Marin County's Motion

The County of Marin ("the County") argues that District Attorney Berberian enjoys absolute immunity for his action in initiating prosecution against plaintiff; and that the County cannot be held liable for failure to supervise/train under either a negligence theory or under a theory of § 1983 municipal liability.

---

[1] The e-mails might charitably be described as reflecting poor-to-nonexistent impulse control on the part of plaintiff.

[2] In addition, while the police officer defendants did not move for summary judgment on the ground of qualified immunity, the court finds, based on the evidence presented by defendants, that it is likely that such a motion would have been granted.

10

1.     Liability of District Attorney

With regard to Berberian, defendants argue that prosecutors are entitled to absolute immunity in suits for money damages for actions relating to the prosecution of a criminal case.

As noted above, two weeks after the date on which his opposition was due, plaintiff submitted a declaration "in support of and application to deny or continue hearing on motions for summary judgment." In his late-filed opposition, plaintiff claims that while the criminal charge was pending in Marin County, he filed a criminal complaint in St. Petersburg against "all those responsible" for the robbery, beating, and kidnaping, including his brother. He also provided a copy of the criminal complaint to the Marin County District Attorney.

According to plaintiff, Berberian then threatened to charge him with witness intimidation, and "succeeded in derailing for several months" the Russian investigation of the robbery, beating, and kidnaping. Nevertheless, plaintiff asserts, the criminal investigation in Russia is ongoing. He claims that the Moscow field office of the Federal Bureau of Investigation and the U.S. Consol General in St. Petersburg are "monitoring" the situation, and that he has been summoned by Russian authorities to "attend an interrogation" in St. Petersburg.

Plaintiff requests that the motions be denied "based on my aforegoing testimony" (referring to the statements in his declaration). In the alternative, he requests a continuance so he can conduct discovery.

The court finds that the motion must be GRANTED as to Berberian. A prosecutor performing an advocate's role is an officer of the court entitled to absolute immunity. See Buckley v. Fitzsimmons, 509 U.S. 259, 272-73 (1993). Prosecutors therefore are absolutely immune from liability for their conduct as "advocates" during the initiation of a criminal case and its presentation at trial. See id.; Imbler v. Pachtman, 424 U.S. 409, 431

(1976).³

2.  Liability of the County

With regard to the County itself, defendants argue that plaintiff cannot sue for failure to supervise/train under a theory of negligence, as no California statute permits suits for direct tort liability against governmental entities for negligent supervision/training or hiring. "[S]overeign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute." Wright v. State of California, 122 Cal. App. 4th 659, 672 (2004) (citation omitted); see Cal. Gov't Code § 815(a) (all governmental liability is governed by statute).

Government Code § 900, et seq., part of the California Tort Claims Act, "prescribes the manner in which public entities may be sued." Chalmers v. County of Los Angeles, 175 Cal. App. 3d 461, 464 (1985). Government Code § 945.4 provides that no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented until a written claim has been presented to the public entity and has been acted upon by the public entity's board, or has been deemed to have been rejected by the board. Stockett v. Assoc. of Cal. Water Agencies, 34 Cal. 4th 441, 445 (2004).

Here, plaintiff did not file a tort claim with the County prior to filing suit. Thus, to the extent that he bases his claims of failure to supervise/train on a negligence cause of action, that claim must be dismissed for lack of subject matter jurisdiction.

Defendants also assert that the County cannot be liable under a theory of Monell liability, as he has provided no evidence of any policy or custom that can be linked to the

---

³ The court finds further that plaintiff's third cause of action, asserting that Berberian violated plaintiff's First Amendment right to petition the government for redress of grievances by attempting to interfere with plaintiff's pursuit of a criminal prosecution in Russia, is frivolous. The First Amendment's Petition Clause protects "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const., amend. I. Deliberate retaliation by state actors against an individual's exercise of the right to petition the government for redress of grievances is actionable under § 1983. Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.1989). However, the "Government" referenced in the First Amendment does not include the governments of foreign countries.

12

County, and pursuant to which the County caused the injury of which plaintiff complains. Moreover, the County argues, because Berberian is immune from suit for actions taken in his role as prosecutor, plaintiff cannot show that Berberian's action resulted from an illegal County policy or custom and cannot prove that his constitutional rights were violated.

As indicated above with regard to the claims against the City of Novato, plaintiff can prevail in his Monell claim only if he shows that he possessed a constitutional right of which he was deprived; that the County had a policy; that the policy amounted to deliberate indifference to the plaintiff's constitutional rights; and that the policy was the moving force behind the constitutional violation. Plumeau, 130 F.3d at 438. Here, plaintiff has provided no evidence of any unlawful County policy or custom. Nor has be provided any evidence of deficient supervision or training, or evidence that a failure to supervise or train resulted in deliberate indifference to his constitutional rights. See Harris, 489 U.S. at 388-91.

In addition, a municipality cannot be liable for damages based on the actions of one of its employees unless the employee inflicted constitutional harm. Heller, 475 U.S. at 799 (1986); Quintanilla, 84 F.3d at 355. As indicated above, Berberian is absolutely immune from suit based on actions taken in the prosecution of the criminal action against plaintiff. Because Berberian inflicted no constitutional injury, the County cannot be liable for Berberian's actions.

Finally, it is undisputed that the District Attorney represents the State of California rather than the County when prosecuting crimes and preparing to prosecute crimes. See Venegas v. County of Los Angeles, 32 Cal. 4th 820, 830-32 (2004) (citing Pitts v. County of Kern, 17 Cal. 4th 340, 356-66 (1998)). Thus, the County has no direct control over the District Attorney's performance of his prosecutorial duties.

D.   Plaintiff's Rule 56(f) Motion

Plaintiff seeks a 180-day continuance to conduct discovery to enable him to oppose defendants' motions. Where the opposing party's declarations show that he "cannot for reasons stated present by affidavit facts essential to justify the party's opposition," the court may deny the motion for summary judgment or continue the hearing to allow additional

13

discovery "or make such other order as is just." Fed. R. Civ. P. 56(f); see also Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2007) § 14:112.

It is not sufficient, however, for the opposing party to simply declare that he requires discovery to oppose the motion. Facts, not conclusions, are required. See State of Calif. on Behalf of Calif. Dept. of Toxic Substances Control v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998). To obtain postponement or denial for further discovery, the opposing party's declaration must show facts establishing a likelihood that controverting evidence may exist as to a material fact, the specific reasons why such evidence cannot be presented at the time of the hearing, and the steps or procedures the opposing party intends to utilize to obtain such evidence. Schwarzer, et al., § 14:114.

If no discovery has yet taken place in the case, a lesser showing of specificity may be required. In that event, "the party making the Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not been laid." Burlington Northern Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation, 323 F.3d 767, 774 (9th Cir. 2003).

Here, it appears that little or no discovery has taken place, although the parties have been free to conduct discovery since the April 4, 2007, initial case management conference. The court finds that even under the more generous standard applied in cases where discovery has not yet taken place, plaintiff has not established a need for discovery to oppose the motions.

Plaintiff is vague about the discovery he wants to pursue. He states only that he has not "had an opportunity to conduct discovery with respect to the exact information available to the police when they arrested me and in the ensuing three weeks while I was held in jail and also with respect to how they were able to communicate with my mother, whom I know speaks only very limited English."

He also wishes to conduct discovery "with respect to the office of the Marin County District Attorney in derailing my criminal complaint to Russian authorities and the threat to

prosecute me for witness intimidation as a consequence of my Russian criminal complaint," and seeks an opportunity to present the results of the criminal investigation he says is being conducted by the Russian police.

Plaintiff does not, however, state what <u>facts</u> he seeks or how those facts can reasonably be expected to create a triable issue with regard to any of the claims asserted against defendants. Accordingly, the court finds that the Rule 56(f) motion must be DENIED.

## CONCLUSION

In accordance with the foregoing, the court hereby GRANTS defendants' motions for summary judgment.

**IT IS SO ORDERED.**

July 27, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge